## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SEALED,<br>    Plaintiffs, | § § § § § § § § | Civil Action No.<br>4:14-cv-545<br><br><br>FILED *IN CAMERA*<br><u>AND UNDER SEAL</u> |
| v. | § § | |
| SEALED,<br>    Defendant. | § § § § | Pursuant to<br>31 U.S.C. § 3730(b)(2)<br><br>Jury Trial Demanded |

# ATTENTION SEAL CLERK

# FILED IN CAMERA AND UNDER SEAL

# FALSE CLAIMS ACT
# FIRST AMENDED COMPLAINT

{00063087; 1 }

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA, the STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, , FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WASHINGTON, WISCONSIN, and the DISTRICT OF COLUMBIA, *ex rel.* JANETTE HALE,<br><br>                              Plaintiffs,<br><br>         vs.<br><br>ROTECH HEALTHCARE, INC.<br><br>                              Defendant. | Case No.  4:14-cv-545<br><br>FIRST AMENDED COMPLAINT<br><br>**FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff-Relator Janette Hale, through her attorneys, on behalf of the United States of America (the "Government," or the "Federal Government"), the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, Washington, Wisconsin, and the District of Columbia ("the States" or the "Plaintiff-States"), for her Complaint against Rotech Healthcare, Inc. ("Rotech") alleges, based upon personal knowledge, relevant documents, and information and belief, as follows:

{00063087; 1 }

2

# I.
## INTRODUCTION

1.     This is an action to recover damages and civil penalties on behalf of the United States of America and the Plaintiff-States arising from false and/or fraudulent records, statements, and claims made and caused to be made by Defendant and/or its agents and employees in violation of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq*., and the False Claims Acts of the Plaintiff-States.

2.     Rotech has engaged in a systematic scheme to defraud the United States and the Plaintiff-States by fraudulently billing government-funded health care programs for respiratory equipment and services that were medically unnecessary, never provided, and/or otherwise billed in violation of the rules of Medicare, Medicaid and other government-funded health care programs.

3.     Since at least 2007, Defendant Rotech has fraudulently billed Medicare, Medicaid, and other government-funded health care programs for durable medical equipment, such as oxygen equipment and Continuous Positive Airway Pressure ("CPAP") therapy supplies.

4.     Rotech's fraudulent billing has taken several forms.  Since at least 2007, Rotech has automatically billed Medicare and Medicaid for oxygen services and CPAP supplies provided to patients despite Rotech's failure to assess and document these patients' continued need for, and use of, these services.  As a result, for months and sometimes years, Rotech has billed government-funded health care programs for services provided to patients who were ineligible for the services and/or no longer using them.

5.     Further, in some cases, not only were the supplies not medically necessary, they were never provided.

{00063087; 1 }

3

6.      Moreover, since at least 2007, Rotech has enrolled patients in, and billed Medicare for, oxygen supply services, despite knowing that these patients were not eligible for Medicare coverage of these services because they did not meet Medicare's eligibility requirements and/or no doctor's order had been obtained.

7.      In addition, starting in 2009, to avoid reduced payments scheduled to take effect, Rotech directed its billers around the country to alter patients' bills to make it appear that the patients had received new equipment when they had not.

8.      In these ways, Defendant has submitted and caused to be submitted thousands of false and fraudulent claims to federal and state-funded health care programs for oxygen services and CPAP supplies.  Each submission is a false or fraudulent claim in violation of the federal False Claims Act and the False Claims Acts of the Plaintiff-States.

9.      The federal False Claims Act (the "FCA") was originally enacted during the Civil War.  Congress substantially amended the Act in 1986 – and, again, in 2009 and 2010 – to enhance the ability of the United States Government to recover losses sustained as a result of fraud against it.  The Act was amended after Congress found that fraud in federal programs was pervasive and that the Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization.  Congress intended that the amendments would create incentives for individuals with knowledge of fraud against the Government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

10.      The FCA prohibits, *inter alia*: (a) knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval; (b) knowingly making or using, or causing to be made or used, a false or fraudulent record or

{00063087; 1 }

4

statement material to a false or fraudulent claim; and (c) knowingly making, using, or causing to

be made or used, a false record or statement material to an obligation to pay or transmit money

or property to the Government, or knowingly concealing or knowingly and improperly avoiding

or decreasing an obligation to pay or transmit money or property to the Government.  31 U.S.C.

§§ 3729(a)(1)(A)-(B), and (G).  Any person who violates the FCA is liable for a civil penalty of

up to $11,000 for each violation, plus three times the amount of the damages sustained by the

United States.  31 U.S.C. § 3729(a)(1).

11.    The FCA allows any person having information about an FCA violation to bring

an action on behalf of the United States, and to share in any recovery.  The FCA requires that the

Complaint be filed under seal for a minimum of 60 days (without service on the defendant during

that time) to allow the government time to conduct its own investigation and to determine

whether to join the suit.

12.    The False Claims Acts of the Plaintiff-States prohibit conduct similar to that

prohibited by the Federal FCA, allow plaintiffs to bring an action on the States' behalf, and

provide remedies analogous to those the Federal FCA provides.  As set forth below, Defendant's

actions alleged in this Complaint also constitute violations of the California False Claims Act,

Cal. Gov't Code §§ 12650 *et seq.*; Colorado Medicaid False Claims Act, Col. Rev. Stat. §§ 25.5-

4-303.5 through 25.5-4-310; Connecticut False Claims Act for Medical Assistance Programs,

Conn. Gen. Stat. §§ 4-274 *et seq.*; Delaware False Claims and Reporting Act, 6 Del. Code Ann.

§§ 1201 *et seq.*; Florida False Claims Act, Fla. Stat. §§ 68-081 through 68-092; Georgia False

Medicaid Claims Act, Ga. Code Ann §§ 49-4-168 *et seq.*; Hawaii False Claims Act, Haw. Rev.

Stat. §§ 661-21 *et seq.*; Illinois False Claims Act, 740 Ill. Comp. Stat. §§ 175/1 *et seq.*; Indiana

False Claims & Whistleblower Protection Law, Ind. Code §§ 5-11-5.5.-1 *et seq.*; Iowa False

Claims Law, Iowa Code §§ 685.1 *et seq*.; Louisiana Medical Assistance Programs Integrity Law,

La. Rev. Stat. Ann. §§ 437.1 *et seq*.; Maryland False Claims Against State Health Plans and State

Health Programs Act, Md. Code Ann. Health-Gen. §§ 2-601 *et seq*.; Massachusetts False Claims

Law, Mass. Gen. Laws ch. 12 §§ 5A *et seq*.; Michigan Medicaid False Claims Act, Mich. Comp.

Laws §§ 400.601 *et seq*.; Minnesota False Claims Act, Minn. Stat. §§ 15C.01 *et seq*.; Montana

False Claims Act, Mont. Code Ann. §§ 17-8-401 *et seq*.; Nevada Submission of False Claims to

State or Local Government Act, Nev. Rev. Stat. Ann. §§ 357.010 *et seq*.; New Jersey False

Claims Act, N.J. Stat. §§ 2A:32C-1 *et seq*.; New Mexico Medicaid False Claims Act, N.M. Stat.

Ann. §§ 27-14-1 *et seq*.; New York False Claims Act, NY State Finance Law §§ 187 *et seq*.;

North Carolina False Claims Act, N.C. Gen. Stat. §§ 1-605 *et seq*.; Oklahoma Medicaid False

Claims Act, 63 Okla. Stat. §§ 5051 *et seq*.; Rhode Island False Claims Act, R.I. Gen. Laws §§ 9-

1.1-1 *et seq*.; Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 through 71-

5-185; Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. §§ 36.001 *et seq*.;

Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1 *et seq*.; Washington

Medicaid Fraud False Claims Act, Wash. Rev. Code §§ 74.66.005 *et seq*., Wisconsin False

Claims for Medical Assistance, Wis. Stat. § 20.931; and the District of Columbia False Claims

Law, D.C. Code §§ 2-381.01 *et seq*.

13.    Based on the foregoing laws, *qui tam* plaintiff Janette Hale seeks, through this

action, to recover damages and civil penalties arising from the false or fraudulent records,

statements and/or claims that the Defendant made or caused to be made by billing Medicare,

Medicaid, and other government-funded health care programs for medically unnecessary and/or

phantom oxygen services and supplies.

## II.
## PARTIES

14.     Plaintiff-Relator Janette Hale is a resident of Texarkana, Texas.  From October 2007 through July 2009, Relator worked as a Billing Specialist for Defendant Rotech.  She was involved in managing Rotech's billing for services provided to patients insured by Medicare, Medicaid, and several private insurers.  In that position she saw thousands of bills submitted by Rotech to, and ultimately paid by, government-funded health care programs.

15.     Relator has witnessed many elements of Rotech's fraud first hand.  For example, in early 2009, Relator, along with other billing personnel, was instructed to switch all of Rotech's Medicare and Medicaid oxygen patients to an automatic billing status.  This meant that going forward, Medicare and Medicaid would be billed monthly for oxygen services regardless of whether the patient continued to need or use the medical equipment, or even whether they received the billed products.  Once this automatic billing was in place, Rotech made little to no effort to establish patients' continued use of the equipment.  As a result, patients frequently received and Medicare and/or Medicaid were billed for services for which the patients had no need.  Before Relator's departure from Rotech in July of 2009, she personally saw hundreds of claims that were false and/or fraudulent for the reasons outlined in this Complaint billed by Rotech and paid by Medicare and Medicaid.

16.     Defendant Rotech Healthcare, Inc. is a for-profit corporation headquartered in Orlando, Florida.  It is a national provider of respiratory-assistance equipment, such as nebulizers, CPAP therapy equipment, and oxygen systems.   It operates through 420 locations across the United States and in 2011 reported net revenue of over $480 million.  Hereinafter, "Rotech" or "Defendant" refers to Rotech Healthcare, Inc. and any and all subsidiaries

{00063087; 1 }

(including but not limited to, Taylor Home Health, Inc.), affiliates, or assumed names under which it conducts business.

## III.
## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 31 U.S.C. § 3732, the last of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.  In addition, 31 U.S.C. § 3732(b) vests this Court with jurisdiction over the state law claims asserted in this Complaint.

18.     Under 31 U.S.C. § 3730(e), and the analogous provisions of the Plaintiff State's Acts, if and to the extent that there has been any public disclosure of the allegations or transactions at issue in this Complaint, Relator is the original source of the allegations herein because: (a) prior to a public disclosure she voluntarily disclosed to the Government the information on which allegations or transactions in the Complaint are based; and/or (b) she has knowledge that is direct and independent and materially adds to the publicly disclosed allegations or transactions, and she voluntarily provided the information to the Government before filing this Complaint.

19.     This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendant has minimum contacts with the United States.  Moreover, Defendant can be found in and has transacted business in the Eastern District of Texas.

20.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a) because Defendant can be found in and transacts business in this district.  At all times relevant to this Complaint, Defendant regularly conducted, and

{00063087; 1 }

continues to conduct, substantial business within this district and/or maintains employees and offices in this district.

## IV.
## APPLICABLE LAW

### A.    Federal and State-Funded Health Care Programs

21.    Various federal and state-funded health care programs pay for respiratory-assistance services as described in this Complaint.  Examples of such payer programs include the following:

### 1.    The Medicare Program

22.    Medicare is a federally-funded health insurance program which provides for certain medical expenses for persons who are over 65, who are disabled, or who suffer from End Stage Renal Disease.  The Medicare program is administered through the Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS").

23.    The Medicare program has four parts: Part A, Part B, Part C and Part D. Medicare Part A, the Basic Plan of Hospital Insurance, covers the cost of inpatient hospital services and post-hospital nursing facility care.  Medicare Part B, the Voluntary Supplemental Insurance Plan, covers the cost of services performed by physicians and certain other health care providers, such as services provided to Medicare patients by physicians, laboratories, and diagnostic testing facilities. *See* 42 U.S.C. §§ 1395k, 1395*l*, 1395x(s).  Medicare Part C covers certain managed care plans, and Medicare Part D provides subsidized prescription drug coverage for Medicare beneficiaries.

24.    To administer the Medicare program, private insurance companies act as agents of the Department of Health and Human Services, making payments on behalf of the program beneficiaries and providing other administrative services.  42 U.S.C. §§ 1395h and 1395u.  These

{00063087; 1 }

9

companies are called "carriers." 42 C.F.R. § 421.5(c).  Through local carriers, Medicare establishes and publishes the criteria for determining what services are eligible for reimbursement or coverage.  This information is made available to the providers who seek reimbursement from Medicare.

25.     Medicare reimburses health care providers for the costs of providing covered health services to Medicare beneficiaries.  *See* 42 U.S.C. § 1395x(v)(1)(A).  In order to bill Medicare Part B, a provider must submit an electronic or hard-copy claim form called the CMS 1500 (formerly known as HCFA 1500) to the appropriate Medicare carrier.  The form describes, among other things, the provider, the patient, the referring physician, the service(s) provided by procedure code, the related diagnosis code(s), the dates of service, and the amount charged.  The provider certifies on the CMS 1500 claim form that the information provided is truthful and that the services billed on the form were "medically indicated and necessary."

26.     In addition, each Medicare provider must sign a provider agreement as a condition of participating in the Medicare program, and by so doing must agree to comply with all Medicare requirements including the fraud and abuse provisions.  A provider who fails to comply with these statutes and regulations is not entitled to payment for services rendered to Medicare patients.

27.     At all times relevant to this action, the local carriers that reviewed and approved the claims at issue in this case based their review upon the enrollment information and claim information provided by the Defendant, and relied on the veracity of that information in determining whether to pay the claims submitted by Defendant.

{00063087; 1 }

## 2.    The Medicaid Program

28.    Medicaid is a public assistance program providing for payment of medical expenses for low-income and disabled patients.   Funding for Medicaid is shared between the Federal Government and those states participating in the program.

29.    Federal regulations require each state to designate a single state agency responsible for the Medicaid program.  The agency must create and implement a "plan for medical assistance" that is consistent with Title XIX and with the regulations of the Secretary of HHS ("the Secretary").  Although Medicaid is administered on a state-by-state basis, the state programs adhere to federal guidelines.  Federal statutes and regulations restrict the items and services for which the federal government will pay through its funding of state Medicaid programs.

30.    Each provider that participates in the Medicaid program must sign a provider agreement with his or her state.  For example, the Texas Health and Human Services Commission requires any prospective Medicaid provider to certify that: (1) its "claims or encounter data will be true, accurate, and complete;" and (2) its records and documents will be "accessible and validate the services and the need for the services billed and represented as provided."

## 3.    Other Federally Funded Health Care Programs

31.    The Federal Government administers other health care programs including, but not limited to, TRICARE/CHAMPUS, CHAMPVA, the Federal Employee Health Benefit Program, and federal workers' compensation programs.

32.     TRICARE/CHAMPUS, administered by the United States Department of Defense, is a health care program for individuals and their dependents affiliated with the armed forces.  10 U.S.C. §§ 1071 *et seq.*; 32 C.F.R. § 199.4(a).

33.     CHAMPVA, administered by the United States Department of Veterans Affairs, is a health care program for the families of veterans with 100 percent service-connected disability.  38 U.S.C. §§ 1781 *et seq.*; 38 C.F.R. § 17.270(a).

34.     The Federal Employee Health Benefit Program, administered by the United States Office of Personnel Management, provides health insurance for federal employees, retirees, and survivors.  5 U.S.C. §§ 8901 *et seq.*; 5 C.F.R. §§ 890.101 *et seq.*

35.     The Federal Employees' Compensation Act provides workers' compensation coverage, including coverage of medical care received as a result of a workplace injury, to federal and postal employees.  The Act is administered by the Department of Labor, Division of Federal Employees' Compensation.  5 U.S.C. §§ 8101 *et seq.*; 20 C.F.R. §§ 10.0 *et seq.*

B.     **The Government Pays Only for Medical Services that are Reasonable, Necessary, and Performed Economically**

36.     Medicare pays only for services that are "medically necessary" – *i.e.*, Medicare requires as a condition of payment that services be "reasonable and necessary for the diagnosis or treatment of illness or injury."  42 U.S.C. § 1395y(a)(1)(A).

37.     Further, providers who wish to participate in the Medicare program must ensure that their services are provided "economically and only when, and to the extent, medically necessary."  42 U.S.C. § 1320c-5(a)(1).

38.     Providers may be excluded from participation in the Medicare program and other federally-funded health care programs, if they routinely bill Medicare for medically unnecessary items or services.  *See* 42 C.F.R. § 1003.102.

{00063087; 1 }

12

### C.     Duty of Providers To Submit Truthful Bills and To Correct Known Errors and Falsehoods in Prior Bills

39.     Federal law prohibits providers from making "any false statement or representation of a material fact in any application for any . . . payment under a Federal health care program." *See* 42 U.S.C. § 1320a-7b(a)(1).

40.     Federal law also requires providers who discover material omissions or errors in claims submitted to Medicare, Medicaid, or other federal health care programs to disclose those omissions or errors to the Government. *See* 42 U.S.C. § 1320-a-7b(a)(3).

41.     The requirement that providers be truthful in submitting claims for reimbursement is a precondition for participation in the Medicare program, the Medicaid program and other federally-funded health care programs. *See, e.g.*, 42 C.F.R. §§ 1003.105, 1003.102(a)(1)-(2).

### D.     Rules Governing Payment for Respiratory Equipment and Supplies

42.     Medicare pays for home oxygen therapy equipment "for patients with significant hypoxemia who meet the medical documentation, laboratory evidence, and health conditions" specified in CMS's national coverage determination for "Home Use of Oxygen." Medicare National Coverage Determinations Manual, Pub. 100-03, § 240.2

43.     Since 2007, Medicare has paid suppliers on a monthly basis to rent oxygen equipment to beneficiaries. This monthly rental payment covers all equipment, accessories, oxygen, and supplies that the patient needs for the entire month.

44.     Medicare covers 80% of the lesser of: (1) the actual charge for the oxygen equipment; or (2) the fee schedule amount for the equipment. Beneficiaries are responsible for the remaining 20% co-payment. *See* 42 U.S.C. § 1395m(a); 42 C.F.R. § 414.226.

45.     Beginning in January 2006, Medicare capped monthly rental payments to suppliers of home oxygen equipment at 36 months of continuous use.

{00063087; 1 }

46.     Since January 2009, with respect to equipment in continuous use starting on or after January 1, 2006, the supplier of oxygen equipment in the 36th month of use must continue to furnish the oxygen and oxygen equipment, without additional rental payments, for the remainder of the 5-year reasonable useful lifetime of the equipment.  During this two year period, suppliers may receive additional payments for delivering oxygen contents and providing standard maintenance.

47.     Medicare covers claims for the provision of oxygen and related equipment for home use (hereafter "oxygen services" or "oxygen therapy") only where such services are "medically necessary" as defined by Medicare's national and local coverage determinations.

48.     In order to be deemed medically necessary, oxygen services must meet several requirements.  First, the supplier must have a detailed written order from a physician prescribing the oxygen services before a claim is submitted.  Medicare will not pay a claim for oxygen services if the supplier bills Medicare without first receiving the completed order.

49.     Second, home oxygen therapy is medically reasonable and necessary only if all of the following conditions are met: (a) the beneficiary's treating physician has determined that the beneficiary has a severe lung disease or hypoxia-related symptoms that might be expected to improve with oxygen therapy; (b) the beneficiary's blood gas study meets the required criteria; (c) the qualifying blood gas study was performed by a physician or by a qualified provider or supplier of laboratory services; (d) the qualifying blood gas study was obtained under specific enumerated conditions; and (e) alternative treatment measures have been tried or considered deemed clinically ineffective.

50.     Depending on the beneficiary's blood gas level, home oxygen therapy may be approved for either a 12 month or 3 month initial period.  If the beneficiary's oxygen pressure

{00063087; 1 }

14

reading (arterial PO2) is at or above 60 mm Hg or his or her arterial blood oxygen saturations at or above 90 percent, then there is a rebuttable presumption that oxygen services are not covered by Medicare.

51.     For all durable medical equipment and supplies (including both home oxygen therapy equipment and other similar equipment such as CPAP therapy equipment), the initial justification for medical need must be established at the time the item is first ordered.

52.     After the initial order, for both rental equipment and supplies (*e.g.*, portable oxygen, or replaceable parts of a CPAP machine, such as masks, tubing and filters) there must be documentation to support both that the item and any newly ordered supplies remain medically reasonable and necessary and continue to actually be used by the beneficiary.

53.     Any of the following may serve as documentation justifying continued medical need: (a) a recent or updated physician order or prescription; or (b) timely documentation in the beneficiary's medical record showing usage of the item.  Timely documentation is defined as a record in the preceding 12 months.

54.     In addition to the documentation of continuing medical need, there must be documentation that the beneficiary continues to actually use the equipment, and that any newly ordered supplies are needed.  Beneficiary medical records or supplier records may be used to confirm that rented equipment continues to be used by the beneficiary and/or that newly ordered supplies are necessary. Any of the following may serve as documentation that an item submitted for reimbursement continues to be used by the beneficiary: (a) timely documentation in the beneficiary's medical record showing usage of the item, related option/accessories and supplies; (b) supplier records documenting the request for refill/replacement of supplies; or (c) supplier records documenting beneficiary confirmation of continued use of a rental item.

{00063087; 1 }

55.     Suppliers are responsible for monitoring utilization of the equipment and supplies. Suppliers must discontinue billing Medicare when rental items or ongoing supply items are no longer being used by the beneficiary.

56.     Moreover, the supplier's records must adequately document that the equipment and any related supplies were actually delivered to the beneficiary.  Suppliers are required to maintain proof of delivery ("POD") for seven years, and provide such proof to Medicare upon request.  For medical review purposes, POD serves to assist in determining correct coding and billing information for claims submitted for Medicare reimbursement.

57.     The POD must include information such as: (a) beneficiary's name; (b) delivery address; (c) a sufficiently detailed description to identify the item(s) being delivered (*e.g.*, brand name, serial number, narrative description); (d) quantity delivered; (e) date delivered; (f) beneficiary (or designee) signature and date of signature.

58.     Regardless of the method of delivery, the contractor must be able to determine from delivery documentation that the supplier properly coded the item(s), that the item(s) delivered are the same item(s) submitted for Medicare reimbursement and that the item(s) are intended for, and received by, a specific Medicare beneficiary.

59.     Suppliers, their employees, or anyone else having a financial interest in the delivery of the item are prohibited from signing and accepting an item on behalf of a beneficiary (*i.e.*, acting as a designee on behalf of the beneficiary).  The signature and date the beneficiary or designee accepted delivery must be legible.

60.     Medicare will deny and seek repayment of any claims for equipment or services if it learns that the service provider does not have appropriate proof of delivery.

{00063087; 1 }

61.     Medicare will pay for maintenance and servicing of a stationary or portable concentrator or transfilling equipment no more often than every 6 months beginning no sooner than 6 months following the end of the 36-month rental period.

62.     Suppliers must actually make a visit before billing for maintenance and service.

## V.
## ALLEGATIONS

63.     Since at least 2007, Rotech has engaged in a pervasive scheme to bill Medicare, Medicaid and other government-funded health care programs for respiratory therapy services that were not medically necessary, were never provided, and/or otherwise violated government billing rules.

64.     As described above, Medicare and Medicaid will pay for respiratory-therapy services such as oxygen therapy or CPAP equipment only if the supplier confirms the patient continues to need and use the equipment and supplies.  For years, Rotech has fraudulently billed government-funded health care programs for oxygen therapy and CPAP equipment that was not needed and/or used by patients.

65.     For example, patients who need oxygen support at home often rely on oxygen concentrators – non-portable devices that concentrate oxygen from ambient air.  These are expensive pieces of equipment and Medicare pays providers a monthly fee to lease these to patients and service them when needed.  However, Medicare will pay these leasing and maintenance fees only if the supplier confirms that the patient continues to need and use the machine, such as by reviewing the equipment's usage values to determine that the patient continues to use it.  Rotech billed monthly for oxygen concentrators leased to patients even though it failed to take even minimal steps to determine if, and otherwise had no evidence to

{00063087; 1 }

demonstrate that, the equipment was still needed or being used, and ultimately for whom it had no indication that the patient continued to need or use the device.

66.     Similarly, mobile patients may use portable oxygen tanks for oxygen support. Medicare will pay for these supplies as long as the provider documents the patient's continued need and use.  Here again, Rotech regularly and consistently billed for oxygen tanks provided to patients for whom it had no evidence the supplies were still needed or being used by the patient.

67.     In or around January 2009, Relator and the other Rotech billers at the billing center where Relator worked were instructed to modify Rotech's computer systems to set all Medicare and Medicaid patients receiving oxygen therapy services to "autobill" status.

68.     This meant that Medicare and Medicaid automatically received monthly bills for these patients' oxygen supplies, regardless of whether Rotech provided the supplies, maintenance, and other services at issue, or otherwise confirmed that the patients receiving these services continued to need and use the oxygen equipment.  However, Rotech billed each program, certifying the patients' continued need for and use of the supplies.

69.     In fact, Rotech could not have confirmed the continued need and use of all of the services it claimed to have provided because it did not have the staff to do the checks necessary to confirm each patient's continued need and use of the oxygen supplies.  In addition, Relator has personal knowledge that her billing office received insufficient monthly invoices from stores delivering equipment to, or otherwise providing services to patients, to support the amount of equipment deliveries or services billed to government health care programs each month.

70.     Similarly, Rotech often billed for portable oxygen tanks that it never delivered. Relator saw numerous examples of claims based on the purported delivery of portable oxygen

tanks to patients even though there was no evidence that Rotech staff had visited the patient recently, nor was there evidence that the tanks were delivered by a third party.

71.     This brazen policy of auto billing for services and supplies without actually visiting the patients has led to ridiculous examples of waste.   In some cases, bedridden patients continued to receive (and the Government continued to be billed for) mobile oxygen equipment that the patients could not and did not use.  In other cases, Rotech continued to bill for mobile and/or stationary oxygen equipment that patients did not use because they were healthy enough to no longer require oxygen support, or in some cases because they were deceased.  In all of these cases, Rotech made no effort to document continued use of the equipment and had no documentation to support continued use.  Because of this failure to ensure continued use, Relator saw instances where Rotech continued to bill for patients for up to six months after they had passed away.

72.     At times, a patient's un-used tanks would be replaced with new ones (and billed again).

73.     Relator personally reviewed bills that Defendant sent to Medicare and Medicaid in precisely these types of situations.

74.     Rotech instituted another fraudulent billing scheme in early 2009 to avoid cessation of monthly rental payments from Medicare for oxygen equipment.  Beginning in January 2006, Medicare capped monthly rental payments for home oxygen equipment at 36 months.  Therefore, beginning in January 2009, monthly rental payments would cease for oxygen equipment that had been rented continuously for 36-months beginning on or after January 1, 2006.  After the 36-month period, oxygen suppliers remained obligated to continue providing

{00063087; 1 }

equipment to beneficiaries for the remainder of the useful life of the equipment (generally another two years).

75.     The practical effect of this was that beginning in January 2009, Rotech was going to stop receiving monthly rental payments on any equipment it had rented for a continuous period of three years.

76.     The Rotech corporate office concocted a simple plan to avoid this drop in revenue.  Rotech executives directed every billing center across the country to make it appear when billing Medicare that beneficiaries with oxygen concentrators had received new equipment even though they had not.  The claim to have provided new equipment re-started the 36-month period during which Rotech could receive rental payments.

77.     Relator was directed to implement this billing policy by her manager, Virginia Rouse.  When Relator and others objected to this practice, they were told by Ms. Rouse's boss that the directions had come from the corporate office and all billing centers around the country were doing it.  Relator later saw an email from Rotech's corporate headquarters to Ms. Rouse confirming this and explaining how to implement the automatic billing.  Ms. Rouse told Relator that despite the bills being sent out, new compressors were not being delivered to beneficiaries as claimed.

78.     Not only were these billings false in that no new equipment was actually provided, but also even if new equipment had been provided Rotech's conduct was prohibited.  CMS specifically prohibits suppliers from replacing a Medicare beneficiary's oxygen equipment, except in limited circumstances, in order to prevent exactly the type of circumvention of payment rules in which Rotech was engaged – resetting the 36-month rental period by providing different equipment.  Pursuant to 42 C.F.R. § 226(g)(2), oxygen equipment may not be replaced

{00063087; 1 }

20

by the supplier prior to the expiration of the reasonable useful lifetime of the equipment unless: 1) it is being replaced by the supplier because the original equipment was lost, stolen, or irreparably damaged, is being repaired, or no longer functions; 2) a physician has ordered different equipment; 3) the beneficiary chooses to upgrade his equipment and signs an ABN; or 4) CMS or the carrier determines that a change in equipment is warranted.

79.     Rotech similarly submitted fraudulent bills for CPAP equipment.  Government regulations required Rotech to confirm a patient's need for equipment such as masks, filters and tubing before sending it or billing for it.  Nonetheless, Rotech automatically billed Medicare and Medicaid on a monthly basis for such equipment that the patients had not requested, did not need and/or did not use.  Because patients frequently did not want or need this equipment, in many cases Rotech would bill for the equipment but never send it.

80.     Rotech also enrolled Medicare and Medicaid patients in its respiratory-therapy services without a doctor's order and despite knowledge that the patients were not eligible for coverage for these services.

81.     Doctors frequently asked Rotech centers to assess their patients to see if they needed oxygen support.  When patients lacked qualifying scores, Rotech routinely enrolled the patients in oxygen services anyway and began billing Medicare and Medicaid.  Rotech employees fabricated test results on forms utilized to justify these enrollments and billings.

82.     In addition, even in cases where patients had qualifying scores, Rotech often failed to send the test results back to the referring physician to get a signed, specific prescription necessary to enroll the patient in Rotech's oxygen services.  Instead, Rotech employees would fax an incomplete order form, lacking a physician's signature, to the Rotech billing office and instruct the billers to begin billing Medicare and/or Medicaid for monthly oxygen services.

{00063087; 1 }

21

83.     Claims to Medicare, Medicaid, or other government-funded health care programs for medically unnecessary respiratory-therapy services, including those provided without a physician's order or without confirmation of continuous need and use of the equipment, and claims for services never provided, are false and/or fraudulent under the Federal False Claims Act and the Acts of the Plaintiff States.

## VI.
## CAUSES OF ACTION

### Count I:
### False Claims Act - 31 U.S.C. §§ 3729(a)(1)(A)-(B) and (G) (2009) and 31 U.S.C. §§ 3729(a)(1)-(2) and (7) (1986)

84.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

85.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, as amended.

86.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the United States Government for payment or approval.

87.     By virtue of the acts described above, Defendant knowingly made or used, or caused to be made or used, false or fraudulent records or statements to get false claims paid or approved and that were material to false or fraudulent claims.

88.     By virtue of the acts described above, Defendant knowingly made or used, or caused to be made or used, false or fraudulent records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Government and knowingly and

improperly concealed overpayments from the United States Government and failed to remit such overpayments.

89.     The Government, unaware of the falsity of the records, statements and claims made or caused to be made by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's illegal conduct.

90.     By reason of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

91.     Additionally, the United States is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

### Count II:
### Texas Medicaid Fraud Prevention Act
### Tex. Hum. Res. Code Ann. §§ 36.002(1), (2), (4), (7), and (12)

92.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

93.     This is a claim for treble damages and penalties under the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. §§ 36.001 *et seq*.

94.     By and through the acts described above, Defendant has knowingly made or caused to be made false statements or misrepresentations of material facts to permit it to receive payments from the Texas Medicaid program that were not authorized or that were greater than the payments that were authorized.

95.     By and through the acts described above, Defendant has knowingly concealed or failed to disclose information, thus permitting it to receive payments from the Texas Medicaid program that were not authorized or that were greater than the payments that were authorized.

{00063087; 1 }

23

96.     By and through the acts described above, Defendant has knowingly made or caused to be made false statements or misrepresentations of material facts regarding information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program.

97.     By and through the acts described above, Defendant has knowingly made or caused to be made claims under the Medicaid program for services and/or products not approved or acquiesced to by a treating physician.

98.     By and through the acts described above, Defendant has knowingly and improperly avoided an obligation to pay or transmit money to the State of Texas under the Medicaid program.

99.     The State of Texas, unaware of the falsity of all such claims and statements material to payments made, has paid and continues to pay such false or fraudulent claims that would not be paid but for Defendant's illegal conduct.

100.     By reason of Defendant's acts, the State of Texas has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

101.     Additionally, the State of Texas is entitled to the maximum penalty of up to $10,000 for each and every violation alleged herein, and up to $15,000 per violation if the violation results in harm to an elderly person.

**Count III:**
**California False Claims Act**
**Cal. Gov't Code §§ 12651(a)(1)-(2) and (7)**

102.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

103.     This is a claim for treble damages and penalties under the California False Claims Act, Cal. Gov't Code §§ 12650, *et seq*.

104.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the California State Government for payment or approval.

105.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the California State Government to approve and pay such false and fraudulent claims.

106.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements to conceal, avoid, or decrease an obligation to pay money to the California State Government.

107.     The California State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

108.     By reason of Defendant's acts, the California State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

109.     Additionally, the California State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

### Count IV:
### Colorado Medicaid False Claims Act
### Col. Rev. Stat. §§ 25.5-4-305(a)-(b) and (f)

110.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

{00063087; 1 }

111.    This is a claim for treble damages and penalties under the Colorado Medicaid False Claims Act, Col. Rev. Stat. §§ 25.5-4-303.5 through 25.5-4-301.

112.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

113.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

114.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the State of Colorado in connection with the Colorado Medical Assistance Act.

115.    The Colorado State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

116.    By reason of Defendant's acts, the Colorado State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

117.    Additionally, the Colorado State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

**Count V:**
**Connecticut False Claims Act for Medical Assistance Programs**
**Conn. Gen. Stat. §§ 4-275(a)(1)-(2), and (8)**
**[renumbered from Conn. Gen. Stat. §§ 17b-301b(a)(1)-(2), and (8)]**

118.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

119.    This is a claim for treble damages and penalties under the Connecticut False Claims Act for Medical Assistance Programs, Conn. Gen. Stat. §§ 4-274 *et seq.*

{00063087; 1 }

120.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval under a state-administered health or human services program.

121.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims under a state-administered health or human services program.

122.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the State of Connecticut under a state-administered health or human services program.

123.    The Connecticut State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

124.    By reason of Defendant's acts, the Connecticut State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

125.    Additionally, the Connecticut State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

### Count VI:
### Delaware False Claims and Reporting Act
### 6 Del. Code Ann. §§ 1201(a)(1)-(2), and (7)

126.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

127.    This is a claim for treble damages and penalties under the Delaware False Claims and Reporting Act, 6 Del. Code Ann. §§ 1201 *et seq.*

{00063087; 1 }

128.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

129.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

130.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the State of Delaware.

131.    The Delaware State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

132.    By reason of Defendant's acts, the Delaware State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

133.    Additionally, the Delaware State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

## Count VII:
### Florida False Claims Act
### Fla. Stat. §§ 68-082(2)(a)-(b), and (g)

134.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

135.    This is a claim for treble damages and penalties under the Florida False Claims Act, Fla. Stat. §§ 68-081 through 68-092.

136.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

{00063087; 1 }

137.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

138.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the State of Florida.

139.    The Florida State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

140.    By reason of Defendant's acts, the Florida State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

141.    Additionally, the Florida State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

**Count VIII:**
**Georgia False Medicaid Claims Act**
**Ga. Code Ann. §§ 49-4-168.1(a)(1)-(2), and (7)**

142.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

143.    This is a claim for treble damages and penalties under the Georgia False Medicaid Claims Act, Ga. Code Ann. §§ 49-4-168 *et seq*.

144.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented to the Georgia Medicaid program, false or fraudulent claims for payment or approval.

145.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

{00063087; 1 }

146.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Georgia Medicaid program.

147.    The Georgia State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

148.    By reason of Defendant's acts, the Georgia State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

149.    Additionally, the Georgia State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

### Count IX:
### Hawaii False Claims Act
### Haw. Rev. Stat. §§ 661-21(a)(1)-(2), and (6)

150.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

151.    This is a claim for treble damages and penalties under the Hawaii False Claims Act, Haw. Rev. Stat. §§ 661-21 *et seq.*

152.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

153.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

154.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Hawaii State Government.

{00063087; 1 }

155. The Hawaii State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

156. By reason of Defendant's acts, the Hawaii State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

157. Additionally, the Hawaii State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

## Count X:
## Illinois False Claims Act
### 740 Ill. Comp. Stat. §§ 175/3(a)(1)(A)-(B), and (G)

158. Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

159. This is a claim for treble damages and penalties under the Illinois False Claims Act, Ill. Comp. Stat. §§ 175/1 *et seq*.

160. By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

161. By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

162. By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Illinois State Government.

163. The Illinois State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

{00063087; 1 }

31

164.    By reason of Defendant's acts, the Illinois State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

165.    Additionally, the Illinois State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

**Count XI:**
**Indiana False Claims and Whistleblower Protection Act**
**Ind. Code §§ 5-11-5.5-2(b)(1)-(2), and (8)**

166.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

167.    This is a claim for treble damages and penalties under the Indiana False Claims and Whistleblower Protection Act, Ind. Code §§ 5-11-5.5-1 *et seq*.

168.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

169.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

170.    The Indiana State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

171.    By reason of Defendant's acts, the Indiana State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

172.    Additionally, the Indiana State Government is entitled to civil penalties of at least $5,000 for each and every violation alleged herein.

{00063087; 1 }

**Count XII:**
**Iowa False Claims Law**
**Iowa Code §§ 685.2(a)-(b), and (g)**

173.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

174.    This is a claim for treble damages and penalties under the Iowa False Claims Law, Iowa Code §§ 685.1 *et seq*.

175.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

176.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

177.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Iowa State Government.

178.    The Iowa State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

179.    By reason of Defendant's acts, the Iowa State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

180.    Additionally, the Iowa State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

**Count XIII:**
**Louisiana Medical Assistance Programs Integrity Law**
**La. Rev. Stat. Ann. §§ 438.3(A)-(C), and (E)(1)**

181.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

{00063087; 1 }

33

182.     This is a claim for treble damages and penalties under the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. §§ 437.1 *et seq.*

183.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims.

184.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

185.     By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to Louisiana medical assistance programs.

186.     By virtue of the acts described above, Defendant knowingly submitted claims for goods, services, and supplies which were medically unnecessary.

187.     The Louisiana State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

188.     By reason of Defendant's acts, the Louisiana State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

189.     Additionally, the Louisiana State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

## Count XIV:
### Maryland False Claims Against State Health Plans and State Health Programs Act
### Md. Code Ann. Health-Gen. §§ 2-602(a)(1)-(2), and (8)

190.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

{00063087; 1 }

34

191.    This is a claim for treble damages and penalties under the Maryland False Claims Against State Health Plans and State Health Programs Act, Md. Code Ann. Health-Gen. §§ 2-601 *et seq.*

192.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

193.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

194.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Maryland State Government.

195.    The Maryland State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

196.    By reason of Defendant's acts, the Maryland State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

197.    Additionally, the Maryland State Government is entitled to the maximum penalty of up to $10,000 for each and every violation alleged herein.

### Count XV:
### Massachusetts False Claims Law
### Mass. Gen. Laws ch. 12 §§ 5B(a)(1)-(2), and (9)

198.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

199.    This is a claim for treble damages and penalties under the Massachusetts False Claims Law, Mass. Gen. Laws ch. 12 §§ 5A *et seq.*

{00063087; 1 }

200.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

201.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

202.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Commonwealth of Massachusetts.

203.    The Massachusetts State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

204.    By reason of Defendant's acts, the Massachusetts State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

205.    Additionally, the Massachusetts State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

### Count XVI:
### Michigan Medicaid False Claims Act
### Mich. Comp. Laws §§ 400-607(1)-(2)

206.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

207.    This is a claim for treble damages and penalties under the Michigan Medicaid False Claims Act, Mich. Comp. Laws §§ 400-601 *et seq*.

208.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims under the social welfare act.

{00063087; 1 }

36

209.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, claims under the social welfare act that Defendant knew falsely represented that the goods or services for which the claims were made were medically necessary in accordance with professionally accepted standards.

210.    The Michigan State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

211.    By reason of Defendant's acts, the Michigan State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

212.    Additionally, the Michigan State Government is entitled to the maximum penalty of up to $10,000 for each and every violation alleged herein.

### Count XVII:
### Minnesota False Claims Act
### Minn. Stat. §§ 15C.02(a)(1)-(2), and (7)

213.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

214.    This is a claim for treble damages and penalties under the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 *et seq*.

215.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

216.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

{00063087; 1 }

217.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Minnesota State Government.

218.    The Minnesota State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

219.    By reason of Defendant's acts, the Minnesota State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

220.    Additionally, the Minnesota State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

## Count XVIII:
### Montana False Claims Act
### Mont. Code Ann. §§ 17-8-403(1)(a)-(b), and (g)

221.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

222.    This is a claim for treble damages and penalties under the Montana False Claims Act, Mont. Code Ann. §§ 17-8-401 *et seq*.

223.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

224.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

{00063087; 1 }

225.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Minnesota State Government.

226.    The Montana State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

227.    By reason of Defendant's acts, the Montana State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

228.    Additionally, the Montana State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

**Count XIX:**
**Nevada Submission of False Claims to State or Local Government Act**
**Nev. Rev. Stat. Ann. §§ 357.040(1)(a)-(b), and (g)**

229.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

230.    This is a claim for treble damages and penalties under the Nevada Submission of False Claims to State or Local Government Act, Nev. Rev. Stat. Ann. §§ 357.010 *et seq.*

231.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

232.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

233.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Nevada State Government.

{00063087; 1 }

234.    The Nevada State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

235.    By reason of Defendant's acts, the Nevada State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

236.    Additionally, the Nevada State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

**Count XX:**
**New Jersey False Claims Act**
**N.J. Stat. §§ 2A:32C-3(a)-(b)**

237.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

238.    This is a claim for treble damages and penalties under the New Jersey False Claims Act, N.J. Stat. §§ 2A:32C-1 *et seq.*

239.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval.

240.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

241.    The New Jersey State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

242.    By reason of Defendant's acts, the New Jersey State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

{00063087; 1 }

243.    Additionally, the New Jersey State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

**Count XXI:**
**New Mexico Medicaid False Claims Act**
**N.M. Stat. Ann. §§ 27-14-4(A), (C), and (H) and**
**New Mexico Fraud Against Taxpayers Act**
**N.M. Stat. Ann. §§ 44-9-3(A)(1)-(2)**

244.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

245.    This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. §§ 27-14-1 *et seq*. and the New Mexico Fraud Against Taxpayers Act, N.M Stat. Ann. §§ 44-9-1 *et seq*.

246.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval.

247.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

248.    By virtue of the acts described above, Defendant knowingly made claims under the New Mexico Medicaid program for services and products that were not provided

249.    The New Mexico State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

250.    By reason of Defendant's acts, the New Mexico State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

251.   Additionally, the New Mexico State Government is entitled to the maximum penalty of up to $10,000 for each and every violation alleged herein.

**Count XXII:**
**New York False Claims Act**
**N.Y. State Fin. §§ 189(1)(a)-(b), and (h)**

252.   Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

253.   This is a claim for treble damages and penalties under the New York False Claims Act, N.Y. State Fin. §§ 187 *et seq.*

254.   By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

255.   By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

256.   By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the New York State Government.

257.   The New York State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

258.   By reason of Defendant's acts, the New York State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

259.   Additionally, the New York State Government is entitled to the maximum penalty of up to $12,000 for each and every violation alleged herein.

{00063087; 1 }

## Count XXIII:
## North Carolina False Claims Act
## N.C. Gen. Stat. §§ 1-607(a)(1)-(2) and (7)

260.    Relator realleges and incorporates by reference the allegations contained in
paragraphs 1 through 83 above as though fully set forth herein.

261.    This is a claim for treble damages and penalties under the North Carolina False
Claims Act, N.C. Gen. Stat. §§ 1-605 *et seq.*

262.    By virtue of the acts described above, Defendant knowingly presented or caused
to be presented, false or fraudulent claims for payment or approval.

263.    By virtue of the acts described above, Defendant knowingly made, used, or
caused to be made or used, false records and statements, material to false and fraudulent claims.

264.    By virtue of the acts described above, Defendant knowingly concealed and
improperly avoided or decreased an obligation to pay money to the North Carolina State
Government.

265.    The North Carolina State Government, unaware of the falsity of the records,
statements, and claims made, used, presented, or caused to be made, used, or presented by
Defendant, paid and continues to pay the claims that would not be paid but for Defendant's
unlawful conduct.

266.    By reason of Defendant's acts, the North Carolina State Government has been
damaged, and continues to be damaged, in a substantial amount to be determined at trial.

267.    Additionally, the North Carolina State Government is entitled to the maximum
penalty of up to $11,000 for each and every violation alleged herein.

**Count XXIV:**
**Oklahoma Medicaid False Claims Act**
**63 Okla. Stat. §§ 5053.1(B)(1)-(2)**

268.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

269.    This is a claim for treble damages and penalties under the Oklahoma Medicaid False Claims Act, 63 Okla. Stat. §§ 5051 *et seq*.

270.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

271.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

272.    The Oklahoma State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

273.    By reason of Defendant's acts, the Oklahoma State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

274.    Additionally, the Oklahoma State Government is entitled to the maximum penalty of up to $10,000 for each and every violation alleged herein.

**Count XXV:**
**Rhode Island False Claims Act**
**R.I. Gen. Laws §§ 9-1.1-3(a)(1)-(2), and (7)**

275.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

{00063087; 1 }

44

276.   This is a claim for treble damages and penalties under the Rhode Island False Claims Act, R.I. Gen. Laws §§ 9-1.1-1 *et seq.*

277.   By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

278.   By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

279.   By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Rhode Island State Government.

280.   The Rhode Island State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

281.   By reason of Defendant's acts, the Rhode Island State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

282.   Additionally, the Rhode Island State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

### Count XXVI:
### Tennessee Medicaid False Claims Act
### Tenn. Code Ann. §§ 71-5-182(a)(1)(A)-(B), and (D)

283.   Relator realleges and incorporate by reference the allegations contained in paragraphs 1-83 above as though fully set forth herein.

284.    This is a claim for treble damages and penalties under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 through 71-5-185 and the Tennessee False Claims Act, Tenn. Code Ann. §§ 4-18-101 *et seq.*

285.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval under the Tennessee Medicaid program.

286.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims under the Tennessee Medicaid program.

287.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Tennessee State Government relative to the Medicaid program.

288.    The Tennessee State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

289.    By reason of Defendant's acts, the Tennessee State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

290.    Additionally, the Tennessee State Government is entitled to the maximum penalty of up to $10,000 for each and every violation alleged herein.

**Count XXVII:**
**Virginia Fraud Against Taxpayers Act**
**Va. Code Ann. §§ 8.01-216.3(a)(1)-(2), and (7)**

291.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

292.    This is a claim for treble damages and penalties under the Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1 *et seq.*

293.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

294.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

295.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Virginia State Government.

296.    The Virginia State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

297.    By reason of Defendant's acts, the Virginia State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

298.    Additionally, the Virginia State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

**Count XXVIII:**
**Washington Medicaid Fraud False Claims Act**
**Wash. Rev. Code §§ 74.66.020(a)-(b), and (g)**

299.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

{00063087; 1 }

300.    This is a claim for treble damages and penalties under the Washington Medicaid Fraud False Claims Act, Wash. Rev. Code §§ 74.66.005 *et seq*.

301.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

302.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

303.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the Washington State Government.

304.    The Washington State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

305.    By reason of Defendant's acts, the Washington State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

306.    Additionally, the Washington State Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

### Count XXIX:
### Wisconsin False Claims for Medical Assistance Act
### Wis. Stat. §§ 20.931(2)(a)-(b)

307.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 8 above as though fully set forth herein.

308.    This is a claim for treble damages and penalties under the Wisconsin False Claims for Medical Assistance Act, Wis. Stat. § 20.931.

{00063087; 1 }

309.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for medical assistance.

310.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims for medical assistance.

311.    The Wisconsin State Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

312.    By reason of Defendant's acts, the Wisconsin State Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

313.    Additionally, the Wisconsin State Government is entitled to the maximum penalty of up to $10,000 for each and every violation alleged herein.

**Count XXX:**
**District of Columbia False Claims Act**
**D.C. Code §§ 2-381.02(a)(1)-(2), and (6)**

314.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

315.    This is a claim for treble damages and penalties under the District of Columbia False Claims Act, D.C. Code §§ 2-381.01 *et seq*.

316.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for payment or approval.

317.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false records and statements, material to false and fraudulent claims.

318.    By virtue of the acts described above, Defendant knowingly concealed and improperly avoided or decreased an obligation to pay money to the District of Columbia Government.

319.    The D.C. Government, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be made, used, or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

320.    By reason of Defendant's acts, the D.C. Government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

321.    Additionally, the D.C. Government is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

## VII.
## PRAYER

WHEREFORE, Plaintiff-Relator Janette Hale prays for judgment against the Defendant as follows:

1.    That Defendant cease and desist from violating 31 U.S.C. §§ 3729 *et seq*. and the counterpart provisions of the state statutes set forth above;

2.    That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

3.    That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of California has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Cal. Gov't Code § 12651(a);

{00063087; 1 }

4.      That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Colorado has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Colo. Rev. Stat. § 25.5-4-305;

5.      That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Connecticut has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Conn. Gen. Stat. § 4-275(a);

6.      That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Delaware has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of 6 Del. Code Ann. § 1201(a);

7.      That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Florida has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Fla. Stat. § 68.082(2);

8.      That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Georgia has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Ga. Code Ann. § 49-4-168.1(a);

9.      That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Hawaii has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Haw. Rev. Stat. § 661-21(a);

10.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Illinois has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of 740 Ill. Comp. Stat. § 175/3(a)(1);

11.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Indiana has sustained because of Defendant's actions, plus a civil penalty of at least $5,000 for each violation of Ind. Code § 5-11-5.5-2(b);

12.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Iowa has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Iowa Code § 685.2;

13.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Louisiana has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of La. Rev. Stat. Ann. § 438.3;

14.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Maryland has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Md. Code Ann. Health-Gen. § 2-602(a);

15.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Massachusetts has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Mass. Gen. Laws Ch. 12 § 5B(a);

16.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Michigan has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Mich. Comp. Laws § 400.607;

17.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Minnesota has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of the Minn. Stat. § 15C.02(a);

{00063087; 1 }

18.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Montana has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Mont. Code Ann. § 17-8-403(1);

19.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Nevada has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Nev. Rev. Stat. Ann. § 357.040(1);

20.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of New Jersey has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of N.J. Stat. §2A:32C-3;

21.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of New Mexico has sustained because of Defendant's actions, plus civil penalties for each violation of N.M. Stat. Ann. § 27-14-4, and N.M. Stat. Ann. § 44-9-3(A);

22.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of New York has sustained because of Defendant's actions, plus a civil penalty of $12,000 for each violation of N.Y. State Fin. § 189(1);

23.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of North Carolina has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of N.C. Gen. Stat. § 1-607(a);

24.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Oklahoma has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of 63 Okla. Stat. § 5053.1(B);

25.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Rhode Island has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of R.I. Gen. Laws § 9-1.1-3(a);

26.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Tennessee has sustained because of Defendant's actions, plus civil penalties for each violation of Tenn. Code Ann. § 71-5-182(a)(1);

27.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Texas has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Tex. Hum. Res. Code Ann. § 36.002;

28.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Virginia has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Va. Code Ann. §8.01-216.3(a);

29.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Washington has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Wash. Rev. Code § 74.66.020;

30.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Wisconsin has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of the Wis. Stat. § 20.931(2);

31.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the District of Columbia has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of D.C. Code § 2-381.02(a);

{00063087; 1 }

32.     That Plaintiff-Relator Janette Hale be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act and the comparable provisions of the state statutes set forth above;

33.     That Plaintiff-Relator Janette Hale be awarded all costs of this action, including attorneys' fees and expenses; and

34.     That Plaintiff-Relator Janette Hale recover such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Janette Hale hereby demands a trial by jury.

Dated:  April 20, 2015

Respectfully Submitted,

Jan Soifer
Texas Bar No. 18824530
Patrick J. O'Connell
Texas Bar No. 15179900
O'CONNELL & SOIFER LLP
98 San Jacinto Blvd., Suite 540
Austin, Texas 78701
(512) 222-0444
jsoifer@oconnellsoifer.com
poconnell@oconnellsoifer.com

Timothy P. McCormack
tmccormack@phillipsandcohen.com
PHILLIPS & COHEN LLP
2000 Massachusetts Ave, NW
Washington, DC 20002
Tel: (202) 833-4567
Fax: (202) 833-1815
(*Application for Admission Pro Hac Vice is Pending*)

Attorneys for Plaintiff-Relator

{00063087; 1 }

55